# EXHIBIT C

Filing # 98262527 E-Filed 11/04/2019 09:38:49 AM

IN THE CIRCUIT COURT OF THE FOURTH JUDICIAL
CIRCUIT IN AND FOR DUVAL COUNTY, FLORIDA

KYLIE COLON-GONZALEZ, individually
and on behalf of all similarly situated persons,

       Plaintiff,                             **Civil Action No.**

v.

                                                **CLASS REPRESENTATION**

NORTH FLORIDA OB GYN, LLC, a Florida
limited liability company, NORTH                     **Jury Trial Demanded**
FLORIDA OBSTETRICAL &
GYNECOLOGICAL ASSOCIATES, P.A., a
Florida corporation, and WOMEN'S CARE
FLORIDA, LLC, a Florida limited liability
company,

       Defendants.

_____/

## CLASS ACTION COMPLAINT

      Plaintiff Kylie Colon-Gonzalez, individually and on behalf of all others similarly situated,

upon personal knowledge of the facts pertaining to herself and on information and belief as to all

other matters, by and through counsel, hereby brings this Class Action Complaint against

defendants North Florida OB GYN, LLC, North Florida Obstetrical & Gynecological Associates,

P.A., and Women's Care Florida, LLC (collectively, "North Florida OB GYN" or "Defendants").

## NATURE OF THE ACTION

      1.    Plaintiff brings this class action against North Florida OB GYN for its failure to

implement and maintain reasonable security measures over personally identifiable information

entrusted to it—in particular, name, demographic information, date of birth, Social Security

number, health insurance information, health information, such as treatment, diagnosis, and related

information and medical images, driver's license or identification card number, and employment

information ("Personal Information").

1

**EXHIBIT C**

2.     On or around September 29, 2019, North Florida OB GYN sent letters to Plaintiff and many others (who are the Class members herein) informing them that their Personal Information may have been accessed by unauthorized individuals while being maintained on North Florida OB GYN's computer system ("Data Breach"). The letter admits the Data Breach occurred from at least April 29, 2019 to July 27, 2019.

3.     As a result of the Data Breach, Plaintiff's and the other Class Members' Personal Information, and perhaps more information, is in the hands of unknown persons who committed federal computer crimes to purloin and use it for criminal and nefarious purposes.

4.     Criminals use information like the Personal Information to perpetrate various identity theft related crimes, such as opening fraudulent credit accounts, filing fraudulent income tax returns and diverting any refund to the criminal's bank account, and impersonating a victim when arrested, obtaining medical services, and seeking employment. These crimes cause significant harm to victims that can last for years, particularly where information as sensitive and valuable as Social Security numbers are involved.

5.     The nature of the information that North Florida OB GYN exposed is highly sensitive and extremely personal, the confidentiality of which is protected under federal law by the Health Information Portability and Accountability Act, 42 U.S. Code § 1320d, and Florida law. Fla. Stat. § 456.057.

6.     The Data Breach was caused and enabled by North Florida OB GYN's violation of its obligations to implement and maintain reasonable security measures to protect Personal Information from unauthorized access and disclosure and provide timely, adequate, and non-misleading notification of the Data Breach.

**PARTIES**

7.      Plaintiff Kylie Colon-Gonzalez is a resident of Jacksonville, Florida.  She has been a patient of Defendants during the relevant time period and was notified in or around September 25, 2019, that her Personal Information retained by Defendants was compromised in the Data Breach that is the subject of this lawsuit.  Plaintiff Colon-Gonzalez has paid, directly and/or through payments for health insurance premiums, for medical services with Defendants and understood that Defendants would maintain and dispose of her Personal Information in compliance with state and federal law as well as Defendants' applicable policies and procedures.

8.      Defendant North Florida OB GYN, LLC, is a Florida limited liability company with its principal place of business in Jacksonville, Florida.

9.      Defendant North Florida Obstetrical & Gynecological Associates, P.A., is a Florida corporation with its principal place of business in Jacksonville, Florida.

10.     Defendant Women's Care Florida, LLC is a Florida limited liability company with its principal place of business in Tampa, Florida.

**JURISDICTION AND VENUE**

11.     The Court has subject matter jurisdiction over Plaintiff's claims under Florida Stat. § 26.012 and § 86.011.  This Court has jurisdiction over this dispute because this complaint seeks damages in excess of $15,000.00 dollars, exclusive of interest and attorneys' fees

12.     Venue is proper in Duval County pursuant to Florida Stat. § 47.011 and § 47.051 because Defendants are headquartered and maintain offices for the transaction of customary business in this County, and a substantial portion of the acts and omissions that give rise to this lawsuit occurred within this County.

13.     The Court has personal jurisdiction over Defendants because under Florida Stat. §
48.193, Defendants personally or through their agents operated, conducted, engaged in, or carried
on a business or business venture in Florida and/or had offices in Florida committed tortious acts
in Florida, and because Defendants engaged in significant business activity within Florida.

## FACTUAL BACKGROUND

14.     North Florida OB GYN is one of the largest women's health medical practices in
northern Florida, with 37 offices in northeast Florida. North Florida OB GYN provides services to
teenage adolescents, young women, mature women, and elderly women regarding obstetrics,
gynecology, and urogynecology.

### *North Florida OB GYN Breach*

15.     Patients of North Florida OB GYN entrust it with their most personal and sensitive
information, including their name, demographic information, date of birth, Social Security
number, driver's license or identification card number, employment information, health insurance
information, and health information, such as treatment, diagnosis, and related information and
medical images.

16.     In early October 2019, North Florida OB GYN announced that its computer
systems containing the Personal Information of 528,188 patients had been compromised and their
personal information had been exposed.

17.     Incredibly, North Florida OB GYN had become aware on July 27, 2019, that a
portion of its computer systems had been compromised since at least April 29, 2019. However,
North Florida OB GYN went at least three months without detecting the intrusion into its systems,
and almost three months before alerting its patients.

18.     Specifically, after becoming aware of the breach, North Florida OB GYN waited several more months before providing any notification to the 528,188 patients whose Personal Information was compromised and exposed—creating additional risk for Plaintiff and Class Members and inhibiting their ability to protect themselves

19.     In light of recent high profile data breaches at other healthcare companies, including, University of Washington Medicine (974,000 patients, December 2018), Wolverine Solutions Group (600,000 patients, September 2018), Oregon Department of Human Services (645,000 patients, March 2019), Columbia Surgical Specialist of Spokane (400,000 patients, January 2019), UConn Health (326,629 patients, February 2019), Navicent Health (278,016 patients, July 2018), North Florida OB GYN knew or should have known that its electronic records would be targeted by cybercriminals.

20.     Despite this, North Florida OB GYN disregarded Plaintiff's and Class Members' privacy rights by failing to take the necessary precautions required to safeguard and protect their Personal Information from unauthorized disclosure. Plaintiff's and Class Members' Personal Information was improperly handled and stored, unencrypted, and not kept in accordance with applicable, required, and appropriate cyber-security protocols, policies, and procedures. As a result, Plaintiff's and Class Members' Personal Information was compromised.

**Data Breaches Lead to Identity Theft**

21.     According to the U.S. Department of Justice Bureau of Justice Statistics, an estimated 26 million people were victims of one or more incidents of identity theft in 2016.[1]

---

[1] See *Victims of Identity Theft, 2016*, DOJ, at 1 (2019), available at https://www.bjs.gov/content/pub/pdf/vit16.pdf (last visited Oct. 24, 2019).

22.     Personal Information is such a valuable commodity to identity thieves that once the information has been compromised, criminals often trade the information on the "cyber black-market" for a number of years.[2]

23.     The Federal Trade Commission ("FTC") has issued numerous guides for business highlighting the importance of reasonable data security practices. According to the FTC, the need for data security should be factored into all business decision-making.

24.     The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect customer data, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

25.     North Florida OB GYN's failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data constitutes an unfair act or practice prohibited by Section 5 of the FTCA, 15 U.S.C. § 45.

***The Monetary Value of Privacy Protections and Personal Information***

26.     At an FTC public workshop in 2001, then-Commissioner Orson Swindle described the value of a consumer's personal information:

> The use of third party information from public records, information aggregators and even competitors for marketing has become a major facilitator of our retail economy.  Even [Federal Reserve] Chairman [Alan] Greenspan suggested here

---

[2] Companies, in fact, also recognize Personal Information as an extremely valuable commodity akin to a form of personal property. *See* John T. Soma et al., *Corporate Privacy Trend: The "Value" of Personally Identifiable Information ("PERSONAL INFORMATION") Equals the "Value" of Financial Assets*, 15 RICH. J.L. & TECH. 11, at *3–4 (2009).

some time ago that it's something on the order of the life blood, the free flow of information.[3]

27.     Commissioner Swindle's 2001 remarks are even more relevant today, as consumers' personal data functions as a "new form of currency" that supports a $26 billion per year online advertising industry in the United States.[4]

28.     The FTC has also recognized that consumer data is a new (and valuable) form of currency. In an FTC roundtable presentation, another former Commissioner, Pamela Jones Harbour, underscored this point:

> Most consumers cannot begin to comprehend the types and amount of information collected by businesses, or why their information may be commercially valuable. Data is currency. The larger the data set, the greater potential for analysis—and profit.[5]

29.     Recognizing the high value that consumers place on their Personal Information, many companies now offer consumers an opportunity to sell this information. The idea is to give consumers more power and control over the type of information that they share and who ultimately receives that information. And, by making the transaction transparent, consumers will make a profit from their personal information.[6] This business has created a new market for the sale and

---

[3] Federal Trade Commission Public Workshop, *The Information Marketplace: Merging and Exchanging Consumer Data*, available at https://www.ftc.gov/sites/default/files/documents/public_events/information-marketplace-merging-and-exchanging-consumer-data/transcript.pdf (last visited Oct. 24, 2019).

[4] *See* Julia Angwin & Emily Steel, *Web's Hot New Commodity: Privacy*, The Wall Street Journal, http://online.wsj.com/article/SB10001424052748703529004576160764037920274.html (last visited Oct. 24, 2019).

[5] *Statement of FTC Commissioner Pamela Jones Harbour—Remarks Before FTC Exploring Privacy Roundtable*, (Dec. 7, 2009), http://www.ftc.gov/speeches/harbour/091207privacyroundtable.pdf (last visited Oct. 24, 2019).

[6] Steve Lohr, *You Want My Personal Data? Reward Me for It*, The New York Times, http://www.nytimes.com/2010/07/18/business/18unboxed.html (last visited Oct. 24, 2019).

7

purchase of this valuable data.[7]

30.     Consumers place a high value not only on their personal information, but also on the privacy of that data. Researchers have already begun to shed light on how much consumers value their data privacy, and the amount is considerable. Indeed, studies confirm that the average direct financial loss for victims of identity theft in 2016 was $850."[8]

31.     The value of Plaintiff's and the other Class Members' Personal Information on the black market is substantial. Stolen medical information similar to the Personal Information is sold on the black market for hundreds of thousands of dollars.[9] By way of the Data Breach, Defendants have deprived Plaintiff and Class Members of the substantial value of their Personal Information. Rather than have an unknown third party realize the value of her Personal Information, Plaintiff would choose to realize that value herself.

***Damages Sustained by Plaintiff and the Other Class Members***

32.     Plaintiff and other members of the Class have suffered injury and damages, including, but not limited to: (i) an increased risk of identity theft and identity fraud; (ii) identity theft and identity fraud; (iii) improper disclosure of their Personal Information, which is now in the hands of criminals; (iv) the value of their time, effort, and money spent mitigating the increased risk of identity theft and identity fraud; (v) the value of their time, effort, and expenses associated with mitigation, remediation, and sorting out the risk of fraud and actual instances of fraud; and

---

[7] *See Web's Hot New Commodity: Privacy*,
http://online.wsj.com/article/SB10001424052748703529004576160764037920274.html     (last visited Oct. 24, 2019).

[8]     *See* Department of Justice, *Victims of Identity Theft, 2016*, at 8 (2019), https://www.bjs.gov/content/pub/pdf/vit16.pdf (last visited Oct. 24, 2019).

[9] *See Healthcare under Attack: What Happens to Stolen Medical Records,* (June 30, 2016), https://www.trendmicro.com/vinfo/us/security/news/cyber-attacks/healthcare-under-attack-stolen-medical-records (last visited Oct. 24, 2019).

(vi) deprivation of the value of their Personal Information, for which there is a well-established national and international market.

33. Plaintiff and the other Class Members have suffered and will continue to suffer additional damages based on the opportunity cost and value of time that Plaintiff and the other Class Members have been forced to expend and must expend in the future to monitor their financial accounts and credit files as a result of the Data Breach.

34. Acknowledging the damage to Plaintiff and Class Members, North Florida OB GYN is instructing its consumers to "remain vigilant by regularly reviewing their account statements, monitoring free credit reports, and reporting to their financial institutions any suspicious activity." Plaintiff and the other Class Members now face a greater risk of identity theft.

## CLASS REPRESENTATION ALLEGATIONS

35. Plaintiff brings this suit on behalf of herself and a class of similarly situated individuals under Florida Rule of Civil Procedure 1.220 on behalf of a class preliminarily defined as:

> All persons notified of the North Florida OB GYN Data Breach in 2019. Excluded from the class are all employees, officers, and directors of the Defendants as well as any court personnel assigned to this case, class counsel and their immediate families.

36. **Numerosity:** The Class Members are so numerous that joinder of all members is impracticable. Though the exact number and identities of Class Members are unknown at this time, but are reported to be over 500,000. The identities of Class Members are ascertainable through Defendants' records, Class Members' records, publication notice, self-identification, and other means.

9

37. **Commonality:** Common questions of law and fact exist as to all Class Members. These common questions of law or fact predominate over any questions affecting only individual members of the Class. Common questions include, but are not limited to, the following:

(a)     Whether North Florida OB GYN violated state and federal laws by failing to properly store, secure, and dispose of Plaintiff and Class Members' Personal Information;

(b)     Whether North Florida OB GYN failed to employ reasonable and adequate data and cybersecurity measures in compliance with applicable state and federal regulations;

(c)     Whether North Florida OB GYN acted willfully, recklessly, or negligently with regard to securing Plaintiff's and Class Members' Personal Information;

(d)     How the Data Breach occurred;

(e)     Whether North Florida OB GYN failed to timely notify Plaintiff and Class Members of the Data Breach;

(f)     Whether Plaintiff and Class Members are entitled to restitution, damages, compensation, or other monetary relief; and

(g)     Whether Plaintiff and Class Members are entitled to injunctive and declaratory relief necessary to secure their Personal Information from further intrusion and exposure.

38. Common sources of evidence may also be used to demonstrate North Florida OB GYN's unlawful conduct on a class-wide basis, including, but not limited to documents and testimony about its data and cybersecurity measures (or lack thereof); testing and other methods that can prove North Florida OB GYN's data and cybersecurity systems have been or remain

10

inadequate; documents and testimony about the source, cause, and extent of the Data Breach; and documents and testimony about any remedial efforts undertaken as a result of the Data Breach.

39.    **Typicality:** Plaintiff's claims are typical of the claims of the respective Class she seeks to represent, in that the named Plaintiff and all members of the proposed Class have suffered similar injuries as a result of the same practices alleged herein.  Plaintiff has no interests adverse to the interests of the other members of the Class.

40.    **Adequacy:**  Plaintiff will fairly and adequately protect the interests of the Class, and has retained attorneys well experienced in class actions and complex litigation as her counsel, including cases alleging consumer protection and data privacy claims arising from medical data breaches.

41.    The Class also satisfies the criteria for certification under Florida Rule of Civil Procedure 1.220(b).  Among other things, Plaintiff avers that the prosecution of separate actions by the individual members of the proposed Class would create a risk of inconsistent or varying adjudication which would establish incompatible standards of conduct for North Florida OB GYN; that the prosecution of separate actions by individual class members would create a risk of adjudications with respect to them which would, as a practical matter, be dispositive of the interests of other class members not parties to the adjudications, or substantially impair or impede their ability to protect their interests; that North Florida OB GYN has acted or refused to act on grounds that apply generally to the proposed Class, thereby making final injunctive relief or declaratory relief described herein appropriate with respect to the proposed Class as a whole; that questions of law or fact common to the Class predominate over any questions affecting only individual members and that class action treatment is superior to other available methods for the fair and efficient adjudication of the controversy which is the subject of this action.  Plaintiff

11

further states that the interests of judicial economy will be served by concentrating litigation concerning these claims in this Court, and that the management of the Class will not be difficult.

42.     Plaintiff and other members of the Class have suffered injury, harm, and damages as a result of North Florida OB GYN's unlawful and wrongful conduct. Absent a class action, North Florida OB GYN will continue to maintain Class Members' Personal Information that could be subject to future breaches due to lax or non-existent cybersecurity measures, and such unlawful and improper conduct should not go remedied. Absent a class action, the members of the Class will not be able to effectively litigate these claims and will suffer further harm and losses, as North Florida OB GYN will be allowed to continue such conduct with impunity and benefit from its unlawful conduct.

## CLAIMS FOR RELIEF

### COUNT I
### Violation of Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201, *et seq.*

43.     Plaintiff realleges each and every allegation contained above, and incorporates by reference all other paragraphs of this Complaint as if fully set forth herein. Plaintiff brings this claim on behalf of the Class set forth above.

44.     This cause of action is brought pursuant to the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"). Fla. Stat. §§ 501.201, *et seq.* The express purpose of the FDUPTA is to "protect the consuming public . . . from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.202(2).

45.     North Florida OB GYN's sale of goods and medical services at issue in this cause are "consumer transaction[s]" within the scope of the FDUTPA. Fla. Stat. §§ 501.201-501.213.

Plaintiff is a "consumer[s]" as defined by the FDUTPA. Fla. Stat. § 501.203. North Florida OB GYN is engaged in trade or commerce within the meaning of the FDUTPA.

46. The FDUTPA declares as unlawful "unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.204(1).

47. The FDUPTA provides that "due consideration be given to the interpretations of the Federal Trade Commission and the federal courts relating to Section 5(a)(1) of the Trade Commission Act." Fla. Stat. § 501.204(2). North Florida OB GYN's unfair and deceptive practices are likely to mislead -- and have misled -- the consumer acting reasonably under the circumstances. Fla. Stat. § 500.04; 21 U.S.C. § 343. As set forth above, North Florida OB GYN's Data Breach was a result of its substandard data and cybersecurity practices in violation of the state and federal requirements as set forth above.

48. Pursuant to the FCRA, HIPAA (42 U.S.C. § 1302d *et seq*.), the FTCA, and Florida law (Fla. Stat. § 456.057 and § 501.171), North Florida OB GYN was required by law to maintain adequate and reasonable data and cybersecurity measures to maintain the security and privacy of Plaintiff's and Class Members' Personal Information. North Florida OB GYN was also under an obligation expressly under Florida law, where North Florida OB GYN is headquartered and managed, to adequately protect Plaintiff's and Class Members' electronic Personal Information. Among other things, Florida requires North Florida OB GYN to (1) take reasonable measures to protect and secure data in electronic form containing PII; (2) take reasonable measures to dispose or destroy PII; and (3) provide notice to consumers and consumer reporting agencies subject to the FCRA when a data security incident occurs that compromises PII. Fla. Stat. §§ 501.171.

49.     North Florida OB GYN has violated the FDUPTA by engaging in the unfair and deceptive practices described above, which offend public policies and are immoral, unethical, unscrupulous and substantially injurious to consumers.  At all times material herein, North Florida OB GYN has failed to maintain adequate and reasonable data and cybersecurity protocols for Plaintiff's and Class Members' Personal Information in violation of state and federal laws and its own privacy practices and policies.  North Florida OB GYN has also failed to take reasonable measures to destroy or dispose of Personal Information and timely notify its patients of the Data Breach in violation of Florida law.

50.     Plaintiff has standing to pursue this claim because she has been injured by virtue of suffering a loss of privacy, money and/or property as a result of the wrongful conduct alleged herein.  Plaintiff would not have purchased North Florida OB GYN's goods and services (or paid as much) had she known the truth about North Florida OB GYN's substandard and shoddy data and cybersecurity measures.  Moreover, North Florida OB GYN will continue to maintain Plaintiff's and Class Members' Personal Information for the indefinite future, giving them a strong interest in ensuring such data is protected with state of the art, industry standards to prevent future data breaches.  As a direct result of North Florida OB GYN's actions and omissions of material facts, Plaintiff and Class Members did not obtain the value of the goods and services for which they paid; were induced to pay for (or pay more for) medical goods and services that they otherwise would not have; and lost their ability to make informed and reasoned decisions about their medical treatment.

51.     The damages suffered by Plaintiff and Class Members were directly and proximately caused by the deceptive, misleading and unfair practices of North Florida OB GYN, as described above.

52.     Plaintiff and Class Members seek declaratory judgment that North Florida OB GYN's data security practices were not reasonable or adequate and caused the Data Breach under the FDUTPA, as well as injunctive relief enjoining the above described wrongful acts and practices of the North Florida OB GYN and requiring North Florida OB GYN to employ and maintain industry accepted standards for data management and security, including, but not limited to proper segregation, access controls, password protection, encryption, intrusion detection, secure destruction of unnecessary data, and penetration testing. Fla. Stat. § 501.211(1).

53.     Additionally, Plaintiff and Class Members make claims for actual damages, attorneys' fees and costs. Fla. Stat. §§ 501.2105, 501.211(2).

## COUNT II
### Negligence

54.     Plaintiff realleges each and every allegation contained above, and incorporates by reference all other paragraphs of this Complaint as if fully set forth herein. Plaintiff brings this claim on behalf of the Class set forth above.

55.     North Florida OB GYN had a duty to exercise reasonable care and protect and secure Plaintiff's and Class Members' Personal Information.

56.     Through its acts and omissions, North Florida OB GYN breached its duty to use reasonable care to protect and secure Plaintiff's and Class Members' Personal Information by employing substandard or non-existent data and cybersecurity protocols.

57.     It was reasonably foreseeable, particularly given legal mandates governing health data protection and the growing number of data breaches of health information, that the failure to reasonably protect and secure Plaintiff's and Class Members' Personal Information would result in an unauthorized third-party gaining access to North Florida OB GYN's networks, databases, and computers that stored or contained Plaintiff's and Class Members' Personal Information.

15

58.     Plaintiff's and Class Members' Personal Information constitutes personal property that was stolen due to North Florida OB GYN's negligence, resulting in harm, injury and damages to Plaintiff and Class Members.

59.     North Florida OB GYN's negligence directly and proximately caused the unauthorized access and disclosure of Plaintiff's and Class Members' unencrypted Personal Information and Plaintiff and Class Members have suffered and will continue to suffer damages as a result of North Florida OB GYN's conduct.  Plaintiff and Class Members seek damages and other relief as a result of North Florida OB GYN's negligence.

## COUNT III
### Negligence *Per Se*

60.     Plaintiff realleges each and every allegation contained above, and incorporates by reference all other paragraphs of this Complaint as if fully set forth herein.  Plaintiff brings this claim on behalf of the Class set forth above.

61.     Pursuant to the FCRA, HIPAA (42 U.S.C. § 1302d *et seq*.), the FTCA, and Florida law (Fla. Stat. § 456.057 and § 501.171), North Florida OB GYN was required by law to maintain adequate and reasonable data and cybersecurity measures to maintain the security and privacy of Plaintiff's and Class Members' Personal Information.

62.     North Florida OB GYN breached its duties by failing to employ industry standard data and cybersecurity measures to gain compliance with those laws, including, but not limited to proper segregation, access controls, password protection, encryption, intrusion detection, secure destruction of unnecessary data, and penetration testing.

63.     It was reasonably foreseeable, particularly given the growing number of data breaches of health information, that the failure to reasonably protect and secure Plaintiff's and Class Members' Personal Information in compliance with applicable laws would result in an

unauthorized third-party gaining access to North Florida OB GYN's networks, databases, and computers that stored or contained Plaintiff's and Class Members' Personal Information.

64.     Plaintiff's and Class Members' Personal Information constitutes personal property that was stolen due to North Florida OB GYN's negligence, resulting in harm, injury and damages to Plaintiff and Class Members.

65.     North Florida OB GYN's conduct in violation of applicable laws directly and proximately caused the unauthorized access and disclosure of Plaintiff's and Class Members' unencrypted Personal Information and Plaintiff and Class Members have suffered and will continue to suffer damages as a result of North Florida OB GYN's conduct.  Plaintiff and Class Members seek damages and other relief as a result of North Florida OB GYN's negligence.

**COUNT IV**
**Breach of Express Contract**

66.     Plaintiff realleges each and every allegation contained above, and incorporates by reference all other paragraphs of this Complaint as if fully set forth herein.  Plaintiff brings this claim on behalf of the Class set forth above.

67.     North Florida OB GYN provides medical services to Plaintiff and Class Members pursuant to the terms of its contracts, which all were a party to, including agreements regarding the handling of their confidential Personal Information in accordance with North Florida OB GYN's policies, practices, and applicable law.  As consideration, Plaintiff and Class Members paid money to North Florida OB GYN and/or their insurers for medical services.  Accordingly, Plaintiff and Class Members paid North Florida OB GYN to securely maintain and store their Personal Information.  North Florida OB GYN violated these contracts by failing to employ reasonable and adequate security measures to secure Plaintiff's and Class Members' Personal Information and by disclosing it for purposes not required or permitted under the contracts.

68.     Plaintiff and Class Members have been damaged by North Florida OB GYN's conduct, including by paying for data and cybersecurity protection that they did not receive, as well as by incurring the harms and injuries arising from the Data Breach now and in the future.

### COUNT V
### Breach of Implied Contract In Fact

69.     Plaintiff realleges each and every allegation contained above, and incorporates by reference all other paragraphs of this Complaint as if fully set forth herein.  Plaintiff brings this claim on behalf of the Class set forth above.

70.     North Florida OB GYN provides medical services to Plaintiff and Class Members. Plaintiff and Class Members also formed an implied contract with Defendants regarding the provision of those services through their collective conduct, including by Plaintiff and Class members paying for medical goods and services from Defendants and by Defendants' performance of and sale of medical goods and services,  regarding the handling of their confidential Personal Information in accordance with North Florida OB GYN's policies, practices, and applicable law.  As consideration, Plaintiff and Class Members paid money to North Florida OB GYN and/or their insurers for medical services.  Accordingly, Plaintiff and Class Members paid North Florida OB GYN to securely maintain and store their Personal Information.  North Florida OB GYN violated these contracts by failing to employ reasonable and adequate security measures to secure Plaintiff's and Class Members' Personal Information and by disclosing it for purposes not required or permitted under the contracts or agreements.

71.     Plaintiff and Class Members have been damaged by North Florida OB GYN's conduct, including by paying for data and cybersecurity protection that they did not receive, as well as by incurring the harms and injuries arising from the Data Breach now and in the future.

## COUNT VI
### Invasion of Privacy (Electronic Intrusion)

72.     Plaintiff realleges each and every allegation contained above, and incorporates by reference all other paragraphs of this Complaint as if fully set forth herein.  Plaintiff brings this claim on behalf of the Class set forth above.

73.     Plaintiff and Class Members maintain a privacy interest in their Personal Information, which is private, confidential information that is also protected from disclosure by applicable laws set forth above.   Plaintiff and Class Members' Personal Information was contained, stored, and managed electronically in Defendant's records, computers, and databases that was intended to be secured from unauthorized access to third-parties because it contained highly sensitive, confidential matters regarding Plaintiff's and Class Members' identities, unique identification numbers, medical histories, and financial records that were only shared with Defendants for the limited purpose of obtaining and paying for healthcare, medical goods and services.  Additionally, Plaintiff's and Class Members' Personal Information, when contained in electronic form, is highly attractive to criminals who can nefariously use their Personal Information for fraud, identity theft, and other crimes without their knowledge and consent.

74.     North Florida OB GYN's disclosure of Plaintiff's and Class Members' Personal Information to unauthorized third-parties as a result of its failure to adequately secure and safeguard their Personal Information is offensive to a reasonable person.   North Florida OB GYN's disclosure of Plaintiff's and Class Members' Personal Information to unauthorized third-parties permitted the physical and electronic intrusion into Plaintiff's and Class Members' private quarters where their Personal Information was stored and disclosed private facts about their health into the public domain.

19

75.     Plaintiff and Class Members have been damaged by North Florida OB GYN's conduct, including by paying for data and cybersecurity protection that they did not receive, as well as by incurring the harms and injuries arising from the Data Breach now and in the future.

## COUNT VII
## Unjust Enrichment

76.     Plaintiff realleges each and every allegation contained above, and incorporates by reference all other paragraphs of this Complaint as if fully set forth herein.  Plaintiff brings this claim on behalf of the Class set forth above, or alternatively.

77.     Plaintiff and Class Members conferred a benefit on North Florida OB GYN by paying for data and cybersecurity procedures to protect their Personal Information that they did not receive.

78.     North Florida OB GYN has retained the benefits of its unlawful conduct including the amounts received for data and cybersecurity practices that it did not provide.  Due to North Florida OB GYN's conduct alleged herein, it would be unjust and inequitable under the circumstances for North Florida OB GYN to be permitted to retain the benefit of its wrongful conduct.

79.     Plaintiff and the Class Members are entitled to full refunds, restitution and/or damages from North Florida OB GYN and/or an order of this Court proportionally disgorging all profits, benefits, and other compensation obtained by North Florida OB GYN from its wrongful conduct.  If necessary, the establishment of a constructive trust from which the Plaintiff and Class Members may seek restitution or compensation may be created.

80.     Additionally, Plaintiff and the Class Members may not have an adequate remedy at law against North Florida OB GYN, and accordingly plead this claim for unjust enrichment in addition to or, in the alternative to, other claims pleaded herein.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff on her own and behalf of all others similarly situated, prays for relief as follows:

A.      For an Order certifying this case as a class action pursuant to Florida Rule of Civil Procedure 1.220, appointing Plaintiff as Class Representative, and the undersigned as Class Counsel;

B.      Awarding monetary, punitive and actual damages and/or restitution, as appropriate;

C.      Awarding declaratory and injunctive relief as permitted by law or equity to assure that the Class has an effective remedy, including enjoining North Florida OB GYN from continuing the unlawful practices as set forth above;

D.      Prejudgment interest to the extent allowed by the law;

E.      Awarding all costs, experts' fees and attorneys' fees, expenses and costs of prosecuting this action; and

F.      Such other and further relief as the Court may deem just and proper.

DATED:  November 1, 2019

Respectfully Submitted,

**WITES LAW FIRM**
Attorneys for Plaintiff and the Class
4400 North Federal Highway
Lighthouse Point, FL  33064
954-933-4400; 954-354-0205 (fax)
pleadings@witeslaw.com

By: */s/ Marc A. Wites*
        MARC A. WITES
        Fla. Bar No. 24783
        mwites@witeslaw.com
        THOMAS B. ROGERS
        Fla. Bar No. 054680
        trogers@witeslaw.com

Ben Barnow (*pro hac vice* to be sought)
Erich P. Schork (*pro hac vice* to be sought)
Anthony L. Parkhill (*pro hac vice* to be sought)
**BARNOW AND ASSOCIATES, P.C.**
205 W. Randolph St., Suite 1630
Chicago, IL 60606
Tel: (312) 621-2000
Fax: (312)-641-5504
b.barnow@barnowlaw.com
e.schork@barnowlaw.com

Laurence D. King (*pro hac vice* to be sought)
Matthew B.  George (*pro hac vice* to be sought)
**KAPLAN FOX & KILSHEIMER LLP**
350 Sansome Street, Suite 400
San Francisco, CA 94104
Telephone: (415) 772-4700
Facsimile: (415) 772-4707
lking@kaplanfox.com
mgeorge@kaplanfox.com

*Attorneys for Plaintiff*